STATE of Missouri, Respondent,

v.

David DUBLO, Appellant.

No. WD 67202.

Missouri Court of Appeals,
Western District.

Oct. 30, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2007.

Application for Transfer Denied
Feb. 19, 2008.

Allan D. Seidel, Trenton, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before NEWTON, P.J., SPINDEN, and HARDWICK, JJ.

NEWTON, Presiding Judge.

Mr. David Dublo attended a party and an argument with some people whom he did not know escalated into a fight. He was hit in the back of the head with a beer bottle, so he left. On his way home, he stopped at Mr. Larry Todd's home. He and Mr. Todd worked at Premium Standard Farms (PSF), a pig farm. According to Mr. Dublo, Mr. Todd said he knew who had attacked him but did not identify them. Mr. Dublo went home. Later that night, two men awakened him and threatened to kill him and his dog. After that confrontation, they left the house.

Mr. Dublo testified that he went to PSF to see if his boss would let him keep his dog in one of the sheds. While there, he encountered and threatened Ms. Leata Beaty, who also worked at PSF. Eventually, his boss told him he could not keep his dog on the site. Mr. Dublo indicated that he did not know what to do, and that he wanted to find out who had threatened him, so he went to find Mr. Todd who Mr. Dublo claimed knew who had attacked him.

At another location at PSF, Mr. Todd, Mr. Timothy Stuver, and Mr. Bruce Wolf were finishing their shift. After each shift the employees shower and exit to a small room. Mr. Todd was the first to leave the shower area. Upon entering the small room, Mr. Dublo walked in, pushed him against a counter, grabbed him by the neck, and held a knife close to his neck. During this encounter, Mr. Dublo said, "You're going with me. Somebody hurt my dog, and you know who done it." Mr. Todd replied that he did not know what Mr. Dublo was talking about. Throughout the encounter, Mr. Dublo made these remarks and Mr. Todd responded in the same way.

Before long, Mr. Stuver walked through the door. Mr. Dublo pushed Mr. Todd away, grabbed Mr. Stuver and put the knife to his throat and said, "I'm taking him with me." Mr. Stuver said that Mr. Dublo stated that he was going to kill Mr. Stuver, but Mr. Todd testified that he did not hear any threats. Mr. Todd repeated that he did not know what Mr. Dublo was talking about and told him to let Mr. Stuver go. Mr. Dublo complied but grabbed Mr. Todd again and took him to his car. Mr. Todd testified that Mr. Dublo repeatedly told him that he was not going to hurt him. They left and got into Mr. Dublo's car, and during this time, Mr. Dublo no longer held the knife close to Mr. Todd's neck.

Shortly afterwords, Mr. Wolf and Mr. Stuver came out of the building. Mr. Wolf had a pig scraper, an approximately four-foot long wooden shaft with a sharp metal end, which is used to clean out the barns. Mr. Dublo exited the car and yelled that they were all witnesses and should come with him. Mr. Dublo testified that he meant that they could witness what he was doing and make sure that Mr. Todd was not hurt. Mr. Wolf responded that no one was going with Mr. Dublo, and told Mr. Todd to get out of the car. Mr. Todd hesitated but eventually got out of the car. In the meantime, Mr. Wolf yelled at Mr. Dublo several times to drop the knife. Mr. Dublo complied, putting the knife on the trunk of his car. Mr. Stuver took the knife, and Mr. Dublo drove away.

Mr. Dublo was charged under a twelve-count indictment for engaging in criminal activity against Mr. Stuver, Mr. Todd, Mr. Wolf, and Ms. Beaty. He waived his right to a jury trial, and the court tried the case.

A motion of acquittal was filed, which the court granted with respect to the armed criminal action (ACA) to Ms. Beaty only. After a trial, Mr. Dublo was found guilty of two counts of assault in the first degree; two counts of ACA; unlawful use of a weapon; unlawful restraint; and a misdemeanor of assault in the third-degree. He was found not guilty of all other charges. Mr. Dublo appeals.

■ "A reviewing court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *State v. Schnelle*, 7 S.W.3d 447, 450 (Mo. App. W.D.1999) (internal quotation marks omitted).

■ In his first point, Mr. Dublo argues that the evidence was insufficient to prove first-degree assault. The assault charges were based on holding a knife to the throats of Mr. Stuver and Mr. Todd and on his attempt to cause serious physical injury. A person commits assault in the first-degree "if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1.[1] "Assault in the first degree, without injury to the victim, requires proof of a very specific intent on the part of the actor to cause serious physical injury. The intent element, however, is generally not susceptible of proof by direct evidence; and may be shown by circumstantial evidence." *Schnelle*, 7 S.W.3d at 451 (quoting *State v. Burton*, 863 S.W.2d 16, 17 (Mo. App.1993)).

In *State ex rel. Verweire v. Moore*, the defendant jabbed a loaded pistol into the victim's side and check and threatened to shoot him. 211 S.W.3d 89, 91 (Mo. banc 2006). The Supreme Court found that because the defendant "did not pull the trigger and . . . he soon retreated from the altercation without ever having attempted to fire the pistol. . . . [H]e did not have the intent to cause serious physical injury." *Id.* at 92. *Verweire* is very similar to this case. Mr. Dublo held a knife close to the necks of the two victims but did not injure or attempt to injure either one with the knife. Even taking the evidence in the light most favorable to the State, it is insufficient to support the intent necessary to support a conviction on first-degree assault.

The State contends that Mr. Dublo's threat to kill Mr. Stuver shows his intent to cause serious physical injury. However, the fact that the defendant threatened to "blow [the victim's] head off" was not enough to support a finding of the specific intent in *Verweire* because "a mere threat

1. All statutory references are to RSMo (2000) and the Cumulative Supplement (2006).

with the ability to carry out that threat does not necessarily constitute an attempt to commit a crime. Instead, there must be strongly corroborating evidence that it was the defendant's conscious object to carry out the threat." *Id.* at 93. The record is devoid of any strong corroborating evidence to support an attempt to cause serious harm. Thus, in light of *Verweire*, as a matter of law, the evidence was insufficient to justify the conviction of assault in the first-degree.

■ Having determined that first-degree assault conviction was unsupported Mr. Dublo asks this court to enter judgment of conviction for third-degree assault. Where a conviction has been overturned for insufficiency of the evidence, a reviewing court may enter judgment on a lesser-included offense if the evidence was sufficient for a jury to find each of the elements and the jury was required to find each of those elements. *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993); *see also State v. Vaughn*, 940 S.W.2d 60, 62–63 (Mo.App. W.D.1997). The lesser-included offense of second-degree assault is unavailable because it has the same elements as first-degree assault but is excused from first-degree assault because it is committed under the influence of sudden passion arising out of adequate cause. *See* § 565.060. Therefore, the same intent required in first-degree assault is required for second-degree assault. Third-degree assault, a misdemeanor, occurs where "(3) [t]he person purposely places another person in apprehension of immediate physical injury; or (4)[t]he person recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person." § 565.070.1. The specific intent requirement to cause serious physical injury disappears. However, we cannot enter judgment in this case because the conviction on first-degree assault did

not require the trial court to find either reckless action or purposefully placing any of the victims in apprehension of immediate physical injury. Although the evidence supports such a judgment, we cannot enter it unless the lower court's decision includes findings of either of these elements. The record does not show the details of the trial court's findings; thus, we cannot say that the trial court found Mr. Dublo to have acted recklessly or that his actions purposefully caused apprehension. The first point is granted in part.

■ In Mr. Dublo's second point he argues that his convictions for ACA related to the first-degree assault convictions so they should be vacated. Section 571.015 provides that any person who commits any felony with the assistance of a dangerous weapon has committed armed criminal action. Because we have reversed the two felony convictions for first-degree assault, there is no basis for the two ACA convictions. Accordingly, we reverse those convictions. Mr. Dublo's second point is granted.

We reverse the convictions for first-degree assault and ACA and remand for a new trial on the lesser-included offense of third-degree assault.

HARDWICK, Judge concurs.

SPINDEN, Judge writes a concurring opinion.

SPINDEN, Judge.

### CONCURRENCE

The majority reaches a result seemingly compelled by *State ex rel. Verweire v. Moore*, 211 S.W.3d 89 (Mo. banc 2006). Because this court is obligated to follow decisions of the Supreme Court, *see* MO. CONST, art. V, Section 2 (1945), I reluctantly concur. I write separately to ex-

press doubts concerning *Verweire's* correctness.

A person commits assault in the first degree "if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.1, RSMo 2000. "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." Section 564.011.1, RSMo 2000. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. The requisite mental state for first degree assault is defined in section 562.016.2, RSMo 2000, which provides, "A person 'acts purposely', or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result."

In *Verweire*, the Supreme Court held that a defendant who jabbed a semi-automatic pistol into an individual's side and cheek and threatened to blow his head off did not take a substantial step toward committing first-degree assault. 211 S.W.3d at 92–93. This was because, the court explained, the defendant had retreated without pulling the trigger. The court ruled that, without evidence of the defendant's pulling the trigger, the state had not established the requisite intent to cause serious physical injury. *Id.* at 92. The court concluded that the defendant had merely threatened to cause serious bodily harm and that "a mere threat with the ability to carry out that threat does not necessarily constitute an attempt to commit a crime." *Id.* at 93. It ruled that, in addition to threats and opportunity to commit the crime, the state is obligated to present strong corroborating evidence

showing that the defendant had a conscious intent to carry out the threat. *Id.*

Although first-degree assault requires proof of a very specific intent, the intent element is generally not susceptible of proof by direct evidence and is most often based upon circumstantial evidence or inferred from surrounding facts. *State v. Chambers*, 998 S.W.2d 85, 90 (Mo.App. 1999). Moreover, intent is an issue of fact for the fact finder to decide.[1] *See State v. Manley*, 223 S.W.3d 887, 891 (Mo.App. 2007); *State v. Polson*, 145 S.W.3d 881, 888 (Mo.App.2004); *State v. Ponder*, 950 S.W.2d 900, 909 (Mo.App.1997).

In *Verweire*, however, the Supreme Court appears to have decided the issue of intent as a matter of law and did not defer to the fact finder's determination. The Supreme Court determined that, because Verweire "did not pull the trigger and ... soon retreated from the altercation without ever having attempted to fire the pistol," he did not have the intent to cause serious physical injury. *Verweire*, 211 S.W.3d at 92.

In explaining what acts must be shown to establish an attempt to commit first-degree assault, the *Verweire* court suggested that the State must show that a defendant pulled the trigger, *see State v. Unverzagt*, 721 S.W.2d 786, 788 (Mo.App. 1986), that a law enforcement officer's intervention thwarted the defendant from acting on his threat to cause serious physical injury, *see In re J.R.N.*, 687 S.W.2d 655, 656 (Mo.App.1985), or that the defendant, although attempting to cause serious physical injury, caused only minor injury, *see State v. White*, 798 S.W.2d 694, 697 (Mo. banc 1990). *Verweire*, 211 S.W.3d at 92.

---

1. In this case, Dublo waived his right to a jury      trial and agreed to a trial by the court.

Thus, in this case, to establish that David Dublo had the intent to cause serious physical injury, the State would have had to show that Dublo either cut the victim without causing serious physical injury or a law enforcement officer intervened before Dublo could act on his intent to cause serious physical injury. This is untenable. I have no serious doubts—and the fact finder obviously did not—concerning Dublo's intentions. His pressing a knife to Timothy Stuver's throat while threatening him demonstrated an intent that Dublo was attempting to cause serious physical injury. It also shows that Dublo was in the process of carrying out his threat. The fact finder was correct in concluding in at least Stuver's case that Dublo had taken substantial steps towards inflicting serious physical injury—even death.

A person's actions tend to reflect his or her intentions. Obviously, when a person jabs a pistol or knife into another's body and threatens to harm them, he or she exhibits an intention to injure the victim seriously, even fatally.

The Supreme Court expressed concern in *Verweire* that a defendant could be found guilty of attempting to commit first-degree assault merely by threatening an individual with a deadly weapon. *See id.* at 93. This issue is worthy of concern. Surely, however, that concern is assuaged when a defendant goes beyond merely wielding a deadly weapon and making a threat and moves to the point of pressing the weapon against a victim's neck. The defendant demonstrates clearly, it would seem, that he intended to do more than make a mere threat.

Indeed, such differences in a defendant's conduct are the very reasons why the legislature classified different degrees of assault. A defendant wielding a deadly weapon and making a threat may be found guilty of assault in the second degree or third degree depending upon the specific circumstances. *See* Section 565.060, RSMo Supp.2006,[2] and 565.070, RSMo 2000.[3] When a defendant goes beyond wielding the deadly weapon and making a

**2.** Section 565.060.1 says, "A person commits the crime of assault in the second degree if he: (1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or (3) Recklessly causes serious physical injury to another person; or (4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself; or (5) Recklessly causes physical injury to another person by means of discharge of a firearm; or (6) Operates a motor vehicle in violation of subsection 2 of section 304.022, RSMo, and when so operating, acts with criminal negligence to cause physical injury to any person authorized to operate an emergency vehicle, as defined in section 304.022,

RSMo, while such person is in the performance of official duties."

**3.** Section 565.070.1 says, "A person commits the crime of assault in the third degree if: (1) The person attempts to cause or recklessly causes physical injury to another person; or (2) With criminal negligence the person causes physical injury to another person by means of a deadly weapon; or (3) The person purposely places another person in apprehension of immediate physical injury; or (4) The person recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person; or (5) The person knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative; or (6) The person knowingly causes physical contact with an incapacitated person, as defined in section 475.010, RSMo, which a reasonable person, who is not incapacitated, would consider offensive or provocative."

threat and presses the weapon against a victim's neck, his conduct shows that he had a conscious intent to carry out his threat and that he had firmness of purpose to complete the commission of the offense. Dublo's actions established that he was attempting to cause serious physical injury to another person.

Moreover, I do not understand the basis for the Supreme Court's distinguishing *Verweire* from *In re J.R.N.*. In the latter case, a defendant entered a hotel carrying a lug wrench and declared that he was there to assault the manager. *J.R.N.*, 687 S.W.2d at 656. The court concluded, "It can be reasonably inferred from the evidence that [the defendant] wanted to strike [the manager] with a lug wrench. Obviously, that could cause serious physical injury or death." *Id.* The *Verweire* court, however, distinguished *J.R.N.* on the ground that, in the latter case, a police officer stopped the assailant before he could carry out his threat. *Verweire*, 211 S.W.3d at 92. The *J.R.N.* court, however, did not mention the police officer's intervention in its analysis. It declared that the defendant's act of attempting to enter the hotel with a lug wrench in his hand coupled with his announcement that he was there "to assault the manager" was sufficient to show that the defendant had taken a substantial step toward the commission of the offense of first-degree assault. *J.R.N.*, 687 S.W.2d at 656.

Nonetheless, the Supreme Court apparently has spoken on the issue. I feel compelled to concur with the majority because of this court's obligation to follow Supreme Court precedent.