

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | )   WD81311 |
| v. | ) |
| | )   OPINION FILED: |
| | )   April 30, 2019 |
| ROGER J. BECK, JR., | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Worth County, Missouri
The Honorable W. Douglas Thomson, Judge**

**Before Division Two:** Thomas N. Chapman, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Mr. Roger Beck ("Beck") appeals from his judgment of conviction and sentences, following a trial by jury, by the Circuit Court of Worth County, Missouri ("trial court"), for assault in the second degree of a special victim and armed criminal action. In two points on appeal, Beck argues (1) erroneous admission of evidence, and (2) insufficiency of evidence to support the verdict. We affirm.

## Factual Background[1]

The victim, Michael Kirkpatrick ("Kirkpatrick"), has been diagnosed with an intellectual disability. On March 8, 2017, while at Beck's house, Beck beat Kirkpatrick on the head and ribs

---

[1] "This Court reviews the evidence presented at a criminal trial in the light most favorable to the verdict." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

with a baseball bat. Kirkpatrick suffered injuries to his head and ribs as a result of the baseball bat attack. Kirkpatrick ran away from Beck and made it to his home where he passed out. When Kirkpatrick awoke, he called emergency services for an ambulance.

Sheriff Tim Davis of the Gentry County Sheriff's Department was dispatched to the hospital where he eventually met with Beck and, in conversation, Beck admitted that he hit Kirkpatrick "solid" three times and further commented that Kirkpatrick could "take a good hit."

Subsequently, Sheriff Davis interviewed Kirkpatrick and observed his injuries. Based on this discussion, law enforcement later obtained a search warrant for Beck's house to look for a wooden baseball bat, which they found under the porch of the home.

Beck was charged with second-degree assault of a special victim and armed criminal action and the case was tried to a jury in September 2017. Additional evidence adduced at trial will be set forth as relevant to our analysis below.

The jury found Beck guilty of second-degree assault of a special victim and armed criminal action. § 565.052; § 571.015.[2] Following the verdict, Beck filed a motion for judgment of acquittal notwithstanding the verdict or for new trial, which the trial court denied. The trial court then sentenced Beck to five years' imprisonment and three years' imprisonment on the convictions, respectively, with the sentences to run concurrently. Beck now appeals.

**Analysis**

Beck was charged with assault in the second degree of a special victim in violation of section 565.052. That statute provides, in pertinent part:

1. A person commits the offense of assault in the second degree if he or she:

. . . .

    (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; . . .

---

[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

2

. . . .

> 3. The offense of assault in the second degree is a class D felony, unless the victim of such assault is a special victim, as the term "special victim" is defined under section 565.002, in which case it is a class B felony.

The State charged Beck with a class B felony under section 565.052.3 because he "attempted to cause physical injury to Michael Kirkpatrick, a person with a disability, and a special victim," as set forth in section 565.002(14), defining a "special victim" as including, among others, "[a] person with a disability[.]" § 565.002(14)(e).

The term "disability" is defined as: "'Disability', a mental, physical, or developmental impairment that substantially limits one or more major life activities or the ability to provide adequately for one's care or protection, whether the impairment is congenital or acquired by accident, injury or disease, where such impairment is verified by medical findings[.]" § 556.061(24).

## I.

We first review Beck's claim of evidentiary error. Review of claims regarding the propriety of the trial court's admission of evidence is for abuse of discretion.

> Circuit courts retain wide discretion over issues of relevancy and admissibility of evidence. The circuit court's discretion will not be disturbed unless it is clearly against the logic of the circumstances. On direct appeal, this Court reviews the circuit court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.

*State v. Matthews*, 552 S.W.3d 674, 681 (Mo. App. W.D. 2018) (quoting *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017)).

At trial, the State offered, over objection, its exhibit 102, which was a Judgment of Incapacity and Disability from the Circuit Court of Cass County, Missouri, dated January 17, 2017. The judgment consisted of a form with a findings section stating: "Respondent is totally incapacitated and totally disabled by reason of respondent's mental condition and is unable to

care for self and financial resources." The trial court admitted the exhibit. At trial and on appeal, Beck challenged the trial court's admission of State's exhibit 102, which he asserted invaded the province of the jury and was logically irrelevant.

Even were we to assume, *arguendo*, that this exhibit was erroneously admitted, we note that, "[o]n direct appeal, this Court reviews the circuit court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Matthews*, 552 S.W.3d at 681. Here, Beck fails to show that the admission of exhibit 102 was prejudicial as it was merely cumulative of other evidence at trial that was not challenged below or on appeal.

For example, Kirkpatrick's own testimony at trial directly showed that he was under a guardianship and demonstrated that he was "unable to care for self and financial resources" as stated in exhibit 102. Specifically, Kirkpatrick testified that he took only "mental retarded [sic]" classes in high school, lived in a group home, could not read or write, could not grocery shop alone, did not have his own checking account, could not count change, and did not have a driver's license.

More importantly, the State also entered its exhibit 109, which was a mental examination of Kirkpatrick from June 2017. Beck does not challenge the admissibility of exhibit 109 on appeal. Though much of the psychiatric evaluation was redacted at trial at Beck's request, the unredacted portion showed that it was a mental examination report created by the Missouri Department of Mental Health and that Kirkpatrick was seen "at Northwest Missouri Psychiatric Rehabilitation Center on April 19, 2017." The report concluded Kirkpatrick's "DSM 5 Diagnoses" to be "Intellectual Disability, Moderate" and "Unspecified Trauma- and Stressor-Related Disorder[.]" The report reflected the opinion of the examiners to be that Kirkpatrick "does have a mental disease, namely Intellectual Disability and Unspecified

4

Trauma- and Stressor-Related Disorder."  The report was signed by two Doctors of Psychology, including a Licensed Psychologist and Certified Forensic Examiner.

"A defendant is not prejudiced when allegedly improper evidence was merely cumulative to other evidence admitted without objection establishing the same facts."  *State v. Hutson*, 487 S.W.3d 100, 108 (Mo. App. W.D. 2016).  As Beck cannot demonstrate prejudice relating to the admission of exhibit 102, his claim of reversible error as to the admission of exhibit 102 also fails.

## II.

Beck also challenges the sufficiency of evidence regarding Kirkpatrick's "special victim" status necessary to support his conviction below.  Appellate review of a claim of insufficient evidence on direct appeal from a criminal trial is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime.  *State v. Reese*, 436 S.W.3d 738, 741 (Mo. App. W.D. 2014).  "We do not reweigh the evidence, but instead consider the evidence in the light most favorable to the verdict, affording the State the benefit of all reasonable inferences."  *State v. Bax*, 459 S.W.3d 493, 495 (Mo. App. W.D. 2015).  "[W]e disregard any evidence or inferences that contradict the verdict."  *Reese*, 436 S.W.3d at 741.

Beck's argument on appeal involves statutory interpretation of the relevant definition of "disability," which consists of three components:  (1) "a mental . . . impairment" (2) "that substantially limits one or more major life activities or the ability to provide adequately for one's care or protection, whether the impairment is congenital or acquired by accident, injury or disease, (3) "where *such impairment* is verified by medical findings[.]"  § 556.061(24) (emphasis added).

5

Beck's flawed contention is that the "medical findings" "verification" requirement applies to *both* the "impairment" *and* the "life activity substantial limitation" elements of the statutory definition. Beck's argument ignores the plain language of section 556.061(24).

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue. It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible." *State v. Baldwin*, 484 S.W.3d 894, 897 (Mo. App. W.D. 2016) (internal quotation marks omitted).

When the language of a statute is unambiguous, we "must give effect to the legislature's chosen language." *Id.* (internal quotation marks omitted). Application of any other rules of statutory construction is only warranted when the language is ambiguous. *Id.* "Other rules of statutory interpretation, which are diverse and sometimes conflict, are merely aids that allow this Court to ascertain the legislature's intended result." *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014) (internal quotation marks omitted). Moreover, "the mere fact that the litigants disagree over the meaning of [a statute or a term therein] does not render the statute ambiguous." *J.B. Vending Co. v. Dir. of Revenue*, 54 S.W.3d 183, 188 (Mo. banc 2001) (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999) ("A mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong.")).

Section 556.061(24) specifies exactly *what* is required to be "verified by medical findings[,]" namely, "such impairment[,]"[3] which refers to the victim's "mental, physical, or developmental impairment[.]" Had the legislature intended to require *medical* proof that such impairment "substantially limits one or more major life activities or the ability to provide adequately for one's care or protection," it could have so indicated in the plain language of the

[3] Beck does not contest that the State presented medical evidence of Kirkpatrick's mental impairment, only that the State failed to present medical evidence of Kirkpatrick's substantial limitation on one or more major life activities.

6

statute (*e.g.*, "where such impairment *and such limitation of activities or ability* are verified by medical findings"), but it plainly did not. "'A court may not add words by implication to a statute that is clear and unambiguous.'" *State v. Simmons*, 270 S.W.3d 523, 531 (Mo. App. W.D. 2008) (quoting *State ex rel. Young v. Wood*, 254 S.W.3d 871, 873 (Mo. banc 2008)). Thus, we reject Beck's attempt to re-write section 556.061(24) and his argument that the State was required to offer medical evidence that Kirkpatrick's impairment "substantially limits one or more major life activities or the ability to provide adequately for [his] care or protection."

Here, between Kirkpatrick's testimony of his substantial life activity limitations and exhibit 109, the unchallenged mental examination report attested to by medical experts, there was substantial evidence that Kirkpatrick has (1) a mental impairment (DSM 5 Diagnosis of Intellectual Disability), (2) that substantially limits one or more major life activities, (3) and such mental impairment is medically verified.

Accordingly, Beck's sufficiency-of-the-evidence challenge to Kirkpatrick's status as a "special victim" on appeal is denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Thomas N. Chapman, Presiding Judge, and Cynthia L. Martin, Judge, concur.

7