STATE of Missouri, Respondent,

v.

Clarence Elmer DOEBERT, Appellant.

No. 46405.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 16, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1983.

Application to Transfer Denied
Nov. 22, 1983.

Almond & Williams, Clinton Almond, Hillsboro, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Clarence Elmer Doebert, appellant herein, was convicted in a jury trial of stealing a motor vehicle, § 570.030, RSMo (Supp. 1981), and was sentenced to five years' imprisonment. This appeal ensues. We affirm.

The questions presented on appeal are: (1) whether sufficient evidence existed to support appellant's conviction; (2) whether the trial court erred by failing to submit to the jury an instruction concerning the presence of the accused at the scene of the crime; (3) whether the trial court erred in admitting testimony of a statement by appellant in rebuttal which had not been disclosed to appellant's counsel as required by Rule 25.03; and (4) whether the trial court erred by not granting a mistrial after sustaining an objection to hearsay testimony by a State's witness.

■ We first consider appellant's challenge to the sufficiency of the evidence. In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in a light most favorable to the verdict and all adverse inferences and evidence disregarded. *State v. Turner,* 631 S.W.2d 695, 696 (Mo.App.1982). Review is limited to whether a submissible case was presented to the jury. *Id.*

Within this standard of review we now consider the evidence. On the evening of October 8, 1981, Blaine Dale Haverstick drove his dirt bike to Vargo's Tavern. The

dirt bike was a 1977 four-stroke, one cylinder, 500 cc Yamaha motorcycle with a red fuel tank and white fenders. When he arrived at the tavern, he parked his motorcycle against the "Mushroom Plant" which is next door to the tavern and went into the tavern. There were no other motorcycles at the tavern when Haverstick arrived. Appellant was in the tavern until approximately 11 p.m. when he left with his friend Ray Stinnett.

At approximately 10:50 p.m. police officers Yates and McDaniel were patrolling the area when they observed two unidentified white males loading a motorcycle onto the back of a pickup truck which was parked near Vargo's Tavern. The motorcycle was described by Officer McDaniel as either a Yamaha or a Honda four-stroke, single cylinder, 350 to 500 cc dirt bike with white fenders and a reddish-orange fuel tank. Again there were no other motorcycles in the area. The police officers then drove around the "Mushroom Plant" and back to the area where they observed a pickup truck, driven by a white male with a white male passenger, leaving with a motorcycle in the bed of the truck. Officer Yates recorded the license number of the truck. Officer McDaniel identified the truck as the same truck he had seen earlier.

Tom Aubuchon arrived at the tavern between 10:30 and 11 p.m. When he arrived he observed two men loading a Yamaha dirt bike onto the bed of a pickup truck. He then went into the tavern and told a friend what he had observed. Haverstick overheard the conversation and went outside where he found his motorcycle missing. Haverstick called the police and Officers Yates and McDaniel returned to the tavern at approximately 11:10 p.m. where they made a report of the theft.

Approximately two weeks later, the officers went to appellant's mobile home where they observed the same truck with the same license number that they had seen during the evening of the crime. Officer Yates immediately identified appellant as the person he saw driving this truck on the night of October 8. The motorcycle was never recovered.

Appellant testified that he owned the pickup truck found at his mobile home and that he had driven it to Vargo's Tavern on the evening of October 8, 1981. He testified that he was in the company of his friend Ray Stinnett that evening but that they had left the tavern at approximately 8 p.m. Appellant testified that he was home by 10 p.m. This was inconsistent with appellant's previous assertion that his son had possession of the truck throughout the evening.

■ There was no direct evidence connecting appellant with the theft of the motorcycle. The State's case was based on circumstantial evidence. When the State's case is based on circumstantial evidence, the facts and circumstances relied upon to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt. The facts and circumstances must also be inconsistent with and exclude every reasonable hypothesis of defendant's innocence. But the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence, and the mere existence of other possible hypotheses is not enough to remove the case from the jury. *State v. Means,* 628 S.W.2d 426, 428 (Mo.App.1982).

■ The evidence against appellant was legally sufficient to uphold his conviction. There was testimony that the victim's motorcycle was the only motorcycle parked outside the tavern on the night of the theft. Officer McDaniel, a motorcycle racer, gave a detailed description of the motorcycle he saw loaded onto the pickup truck. His description was virtually identical to the description given by the victim. A reasonable inference from this evidence was that the motorcycle which was loaded onto the pickup truck was owned by the victim Haverstick.

Appellant and his friend left the tavern at approximately the same time the crime occurred. Two white males were seen loading the motorcycle onto a pickup truck.

When the officers circled the block, a pickup truck with a motorcycle in the bed passed them. It was identical to the pickup truck they saw seconds before and had two white males in the passenger compartment. Officer Yates identified appellant as the driver of the truck. A reasonable inference from this evidence was that the pickup truck, which was driven by appellant, was the same truck that the officers saw two males loading a motorcycle onto seconds before, and that appellant was one of the two males who was seen loading the motorcycle onto the truck. Appellant's first contention is denied.

■ Appellant next contends that the trial court erred by failing to instruct the jury concerning the inferences which they may draw from the presence of the accused at the scene of the crime.

MAI–CR 2.10, in pertinent part, instructs the jury about the relevancy of the presence of the accused at the scene of a crime. Appellant is correct in asserting that this instruction, in effect until December 31, 1982, was a required instruction, whether requested or not, when the defendant's guilt is based on the theory of accessorial liability and when there is some evidence that the defendant was either at or near the scene of the offense. This instruction supplements MAI–CR 2.12, which is used to modify the substantive criminal instruction to account for accessorial liability. Rule 28.02(a); MAI–CR 2.10, Notes on Use 3 and 5; MAI–CR 2.12, Notes on Use 2. However, at the time of trial, the Missouri Supreme Court had recently revised and approved (April 30, 1982) MAI–CR 2.12, 38 Mo.B.J. 307, 307–308 (1982). Although the new 2.12 instruction was not to become effective until January 1, 1983, use of the instruction was permitted prior thereto. 38 Mo.B.J. 305. Simultaneously, the supreme court approved the recision of MAI–CR 2.10, 38 Mo.B.J. 306, and approved a new instruction, MAI–CR 3.66, 38 Mo.B.J. 311, all to become effective January 1, 1983. MAI–CR 3.66, also permitted to be used prior to its effective date, instructs the jury

on the effect of the presence of the accused at the scene of the crime. It therefore is a substitute for 2.10, but unlike 2.10, is not required unless requested. Rule 28.02(a); Notes on Use, MAI–CR 3.66, 38 Mo.B.J. 311. The trial court elected to use the new version of MAI–CR 2.12. Appellant conceded during the hearing on his new trial motion that this was permissible. Nonetheless, he argues that the trial court had a duty to deliver either MAI–CR 2.10 or MAI–CR 3.66.

■ Since the trial court elected to use the new version of 2.12, it was obliged to follow the new Notes on Use. Failure to follow the Notes on Use applicable to the new instruction is presumptively prejudicial error. *State v. White,* 622 S.W.2d 939, 943 (Mo. banc 1981). Therefore, the only permissible instruction was MAI–CR 3.66 which the trial court was not obliged to give absent a request from appellant. Rule 28.02(a). Appellant's contention is denied.

■ Appellant's next point is that the trial court erred by allowing into evidence testimony by a rebuttal witness concerning an inconsistent statement made by appellant because the State failed to disclose the statement after a written request in violation of Rule 25.03(A)(2).

The "undisclosed" statement by appellant was brought out on cross-examination of a State's witness by defense counsel prior to the rebuttal testimony. Since defense counsel made no objection or motion to strike the answer, appellant's statement became part of the evidence in the case. Appellant cannot complain of the State's failure to disclose statements made by him when the statements were elicited at trial by appellant's counsel during cross-examination. *See Arnold v. State,* 632 S.W.2d 54, 55 (Mo.App.1982). Appellant's contention is denied.

An extended opinion on appellant's final point would have no jurisprudential value and is therefore denied pursuant to Rule 30.25(b).

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.